# Edward S. Savage

## *v.*

## Port Reading Railroad Company.

[Submitted August 2d, 1907. Decided August 7th, 1907.]

To warrant a mandatory injunction the invasion of complainant's rights must be substantial or the damage irreparable, the right thereto must be clear, and there must exist an urgent necessity for the issue of the writ, and an injunction to compel defendant to remove obstructions from a water course will be denied, where the controversy centres about the ownership of land, the affidavits do not set out a title in either party which would support ejectment, defendant has been in possession nearly sixteen years, complainant and his predecessors do not seem ever to have been in possession, the obstructions have been erected fifteen years, no proceedings have been heretofore taken to remove them, they are in daily use in conducting defendant's business, a bulkhead, one of the obstruc-

tions, cost $10,000, it would cost $4,000 to remove it, its removal would hamper defendant in handling seven thousand tons of coal daily, and the land cannot be used for farming or commercial purposes, being a sunken meadow.

On motion for mandatory injunction. On bill and affidavits.

*Mr. William H. Osborne* and *Mr. Edward S. Savage,* for the complainant.

*Mr. Ephraim Cutter,* for the defendant.

HOWELL, V. C.

This is a motion for preliminary injunction to compel the Port Reading Railroad Company, the sole defendant, to remove a bulkhead and other obstructions erected by it across the mouth of Thorp's creek, a small natural water course which empties into Staten Island sound, and also to compel the company to likewise remove a dam which it has built across the same creek a short distance above its mouth and to fill up a ditch through which the water of the creek has been diverted from a point above the dam to Staten Island sound.

The controversy centres about the ownership of a piece of land containing about three acres which lies between Thorp's creek and Staten Island sound and at their point of junction.

The land in question is bounded on the north by Thorp's creek, and on the south by Staten Island sound; at the east it extends to the junction of the creek with the sound, and at the west it is bounded by Winant's meadow. A diagram is annexed to the bill showing the general situation.

The complainant claims to own an undivided half interest in this land by virtue of a deed made to him on January 6th, 1906, by Albert Bruns and wife. He states that his title to this half interest is deduced from a deed made by William H. Rutan to Israel Oakley, in 1846, but which was not entered for record in the clerk's office of the proper county until March 27th, 1902. But he does not give any of the intervening conveyances nor in any manner show how Bruns derived title from Oakley.

The defendant claims that it purchased the whole of the tract of land in question on September 30th, 1890, from Lewis N. Meyer, who, on that day, conveyed the same to Gordon Chambers, an employe of the railroad company, who, on December 9th, 1890, conveyed the same to the railroad company. In these deeds from Meyer and Chambers the lands are described as "all that certain lot of salt meadow situate at Sunken Marsh in the said township, bounded by Thorp's creek on the north, the sound on the east and the meadow of James J. Winant on the south, containing one and one-half acres, more or less."

The defendant further claims that by these deeds it took title to the whole of the said premises and that it had no notice of the deed from Rutan to Oakley, the same not having been recorded at the time of the railroad company's purchase.

The complainant asserts that inasmuch as the deed to the railroad company described the land as containing one and one-half acres it must be inferred that the grantor meant to convey, and the railroad company meant to purchase, an undivided one-half interest in the three acres in which he claims to have the other undivided half interest.

It does not appear that the complainant or his predecessors in title were ever in possession of any portion of the disputed territory or that there was anything on the land at the time of the railroad company's purchase to indicate either possession or ownership of any character which would amount to notice to the railroad company of the outstanding unrecorded deed. On the contrary, the railroad company claims that it took possession of the land immediately on its purchase in 1890; that it built its terminal adjacent thereto in 1892, and that in 1896 it constructed across the mouth of Thorp's creek a bulkhead, built of piling, on which it laid a platform, and that on the platform were constructed several offices and storehouses, all of which are used by the railroad company which operates the Port Reading line in connection with the conduct of its business at its Port Reading terminal. The bill admits that the defendant has held possession of the whole tract since 1892.

The relief sought is not merely prohibitive and preventive; the complainant seeks to compel the defendant to forthwith

remove its bulkhead and office buildings so as to leave the mouth of the creek unobstructed. The application is, therefore, for a mandatory injunction to coerce the defendant into active and affirmative measures looking to the breaking up of the obstructions complained of and the freeing of the mouth of the creek so that it may be navigated by boats of a size suitable to its capacity.

The law and practice touching the issue of mandatory injunctions in our state is thoroughly well settled.

In *Lord* v. *Carbon Iron Manufacturing Co., 38 N. J. Eq. (11 Stew.) 458*, Vice-Chancellor Van Fleet said:

"Injunctions of this nature are rarely granted before final hearing or before the parties have had a full opportunity to present all the facts of the case in such manner as will enable the court to see and judge what the truth is. They are always granted cautiously and are strictly confined to cases where the remedy is plainly inadequate."

This language was quoted with approval by the court of errors and appeals in the case of *Bailey* v. *Schnitzius, 45 N. J. Eq. (18 Stew.) 184.*

To this may be further added the requirements that the invasion of the right must be a material and substantial one, or, in other words, that the damage shall be irreparable, and that the right of the complainant must be clear and unmistakable on the law and the facts, and there must exist an urgent and paramount necessity for the issue of the writ in .order to prevent extreme or other serious damage which would ensue from withholding it. *Longwood Valley Railroad Co.* v. *Baker, 27 N. J. Eq. (12 C. E. Gr.) 166; Hodge* v. *Giese, 43 N. J. Eq. (16 Stew.) 342.*

As an example, the case of *Broome* v. *New York and New Jersey Telephone Co., 42 N. J. Eq. (15 Stew.) 141,* may be cited. It was there held that the writ would issue where there was a deliberate, unlawful and inexcusable invasion by one man of another's land for the purpose of continuing a trespass for the trespasser's gain or profit and there had been neither acquiescence nor delay in applying to this court for relief.

There the injury was material, the complainant's right clear, and there was an urgent necessity to prevent that degree of irreparable damage which otherwise would have ensued.

Chancellor McGill has collected the cases on the subject in *National Docks Railway Co.* v. *Pennsylvania Railroad Co., 54 N. J. Eq.* (*9 Dick.*) *10.*

Such being the law and practice of this court with regard to the issue of mandatory injunctions, we are led to inquire, as the first prerequisite, whether the complainant's right is clear. That an injunction will not issue unless the right is clear and unmistakable is a fundamental rule which applies to the issue of prohibitory injunctions, and *a fortiori* to injunctions mandatory in their character.

The submitted affidavits do not set out a title in either party which would support an action of ejectment. But inasmuch as the defendant is in actual possession of the premises, so far as its possession can be had by anybody, and that possession has continued since 1890, and the complainant and his predecessors in title do not appear ever to have been in possession of any part of the property, I can hardly say that the complainant's title under his deed is clear and unmistakable. In fact, it appears to me, from the very meagre facts before me, to be extremely doubtful; at any rate, it is of such a character as that in my mind it is insufficient on which to found a mandatory injunction. *Dobleman* v. *Gately & Hurley Co., 64 N. J. Eq.* (*19 Dick.*) *223.*

But supposing the question of title to have been disposed of in favor of the complainant, is it necessary for his protection in the enjoyment of his inheritance that the mandatory writ should go immediately against the defendant to compel it to remove forthwith what he terms "the obstructions" placed by the defendant in the way of navigating the creek? It must be remembered that the complainant did not get his supposed title until January, 1906; that the defendant, the railroad company, had then been in possession of the land for nearly sixteen years; that nearly all the constructions and obstructions complained of were erected about fifteen years ago; that none of the predecessors in title of the complainant ever took any proceedings

during the whole of this period looking to the opening of the mouth of the creek; that the erections are in daily use by the company which operates the Port Reading line in the conduct of its business; that the bulkhead cost, originally, $10,000, and that it would cost at least $4,000 to remove it; that its removal would hamper the operating company in the handling of about seven thousand tons of coal a day; that the land is of such a character as that it cannot be used for farming or commercial purposes, it being described as sunken meadow, and that the complainant is out of possession. When all these things are considered, it must be quite apparent that there is no immediate necessity for an injunction to protect the complainant's rights.

If, therefore, the complainant's right is in doubt, and he can show no immediate necessity for the interposition of the court, he fails in two material points, and the writ must be denied at this time.